## BLAIR v. CITY OF GROTON.

1. Whether proof of the correctness of a map purporting to represent a topographical sketch of lands in controversy is sufficient to authorize its admission in evidence is a question of fact for the trial judge, and, in the absence of any injury resulting from its admission, his decision will not be reviewed.

2. The giving of contradictory instructions is harmless, where it is clear that the jury has not been mislead, and it appears that the incorrect instruction is most favorable to appellant.

3. An instruction given in substance in the general charge is properly refused.

(Opinion filed June 1, 1900.)

Appeal from circuit court, Brown county. Hon A. W. CAMPBELL, Judge.

Action by William Blair against the city of Groton. From a judgment for plaintiff, defendant appeals. Affirmed.

*L. W. Crofoot* and *K. McKenzie*, for appellant.

FULLER, P. J. Plaintiff, the owner of 160 acres of land contiguous to defendant's corporate boundaries, brought this action to recover damages occasioned during a series of years by the negligence of the defendant in permitting the water from its artesian well to flow upon, submerge, and destroy the usefulness of one-half the entire tract in the manner set forth in his complaint, as follows: "That the said well was constructed by said defendant for its own use for fire protection, and to obtain a supply of water for said city, and defendant has ever since and during the last six years maintained said well, and permitted the water to flow out of the same and away therefrom. That the defendant, without the plaintiff's consent, has permitted and allowed said water during the past six years to flow away from said well, across the streets and alleys and other lands within said city, and over and upon the said lands belonging to said plaintiff. That said water has so flowed over and upon the said lands of plaintiff in large quantities for the years 1893, 1894. 1895, 1896, 1897, and 1898, and during the season of each of said years proper for the planting and growing of said crops. That said lands of plaintiff were hay and grain lands, and suited to the production of crops, and said water so permitted to flow by defefendant has covered during each of said years eighty acres of said lands of said plaintiff,

and defendant has during each of said years prevented plaintiff from using eighty acres of said lands, and has rendered eighty acres thereof during each of said years unfit for cultivation, and has deprived plaintiff of the use thereof. That the actual value of the use of said lands for each year of which plaintiff has been so deprived of its use was the sum of one dollar and fifty cents per acre. That during said years the defendant has permitted said water to accumulate and stand on said lands, and the effect thereof has been to kill the natural grass standing on part thereof, and to saturate the soil with said water, and the lands have thereby become and been rendered unproductive and unfit to produce crops and, as plaintiff is informed and believes, said lands will so remain unproductive and useless for cultivation and agriculture for at least five years in the future, and defendant has thereby damaged plaintiff in the further sum of five hundred dollars. That plaintiff has been damaged by the said wrongful act of defendant in the sum of one thousand dollars, for which sum plaintiff demands judgment against defendant, with the costs of this action." The answer amounts to a general denial of the foregoing allegations, and the issues thus raised were tried to a jury, resulting in a verdict for plaintiff for $475, and this appeal is from a judgment accordingly entered, together with an order overruling a motion for a new trial.

Immediately prior to the trial, one of the witnesses for respondent, shown to be familiar with the *locus in quo*, drew what the record discloses to be "a pencil sketch, showing the boundaries of the land in controversy, and the other lands in that vicinity, and also indicating by pencil lines the draws or depressions upon the land in controversy and upon other lands

in that vicinity"; and, upon proof that this representation was nearly correct, the same was admitted in evidence, over the objection of appellant's counsel, who now contends. that such action of the court constitutes reversible error. . Evidently this sketch was not received as an absolutely correct representation, or as conclusive proof of what it purported to be, but rather for what it was worth as an aid to the jury in understanding the testimony of the witness. Whether a sufficient foundation had been laid for its admission is a preliminary question of fact, to be decided by the judge presiding at the trial, and in the absence of any injury resulting therefrom, his decision is not subject to review. Blair v. Pelham, 118 Mass. 420; Railroad Co. v. Smith, 90 Ala. 25, 8 South, 43; Coal Co. v. Kelly, 156 Ill. 9, 40 N. E. 938; Holliday v. Maddox, 39 Kan. 359, 18 Pac. 299; Griffith v. Rife (Tex., Sup.) 12 S. W. 168. It is very evident that this sketch was not treated as a verity, for the reason that the witness testified that it was not drawn from actual survey, and for the further reason that the members of the jury were in a body permitted to view the premises in controversy, and thus determine from actual observation the probative force of such exhibit, if any it had.

The remaining question presented by the record relates to the refusal of the court to give certain instructions requested by counsel for appellant, and to the charge of the court upon its own motion, as follows: "So far as the fact of damages is concerned, the plaintiff, as I have already said to you, claims, by reason of the water which has been on the premises up to this time, the land has been rendered less productive, and will continue less productive for the period of five years to come. I don't know that it is claimed that its productiveness will be

wholly destroyed, but will be partially so—its productive quali-
ties lessened—for a period of five years to come; and if you
find that any such injuries will result by reason of the water
continuing to overflow from this well, by reason of the negli-
gence of the plaintiff, then you will allow such damages as may
occur by reason of this fact. It is not to be presumed that the
well will continue to flow upon that land in the future. If it
should continue to flow, and plaintiff should be damaged there-
by, then he would have a subsequent cause of action. But he
is entitled to recover, if he is entitled to recover at all, for
such damages as he may suffer in the future' by reason of the
water being on the land up to this time, in addition to such
damages as he may have suffered by reason of the overflow on
this land from the well in the past." It was clearly establish-
ed, by evidence admitted under the complaint, without objec-
tion, that, by appellant's negligence as alleged, respondent had
been deprived of the use of from 60 to 80 acres of excellent
land for the past six years, and that water had so permanently
injured the soil that several years must elapse before it could
be reclaimed and made productive of anything but weeds, sun-
flowers, and worthless wire grass. In fact a number of wit-
nesses, shown to be competent to testify to the point, gave it
as their opinion that the land upon which the water stood
would never be good for anything. By the inadvertent use of
the words "continuing to overflow," instead of the expression
"having continued to overflow," it is contended by counsel that
the court expressly directed the jury to allow such damages as
may occur in coming time by reason of appellant's contin-
ued negligence in permitting the water to flow upon the prem-
ises of respondent in the future, instead of such damages as he

may have already sustained in the way of permanent injury caused by past overflows. At the time the foregoing phrase was uttered the attention of the court was called thereto by an exception to the instruction, and it is clear from what immediately followed that the court undertook to remedy the mistake by repeating and emphasizing the correct rule by which to measure the damages, and, in our opinion he did so as effectually as he could have done had the former misstatement been expressly withdrawn. Generally, where instructions on a material point are contradictory, it is impossible for the jury to decide which should prevail, and consequently the giving of such instructions is usually regarded reversible error; but in this case the latter expression so clearly nullifies the former that the jury could not have been misled. If, as the witnesses testified, the land was ruined, a continuation of the overflow could not aggravate the injury, nor was there any evidence upon which to base a computation of such damages. Consequently, the incorrect expression or instruction was most favorable to appellant, who was not injured, and a reversal ought not to follow. We think this case comes clearly within the exception to the rule that it is reversible error to give contradictory instructions, and that the effect of what the court gave as an instruction immediately upon its attention being called to the error of expression amounts to a withdrawal thereof, and the jury could not have been misled. Railroad Co. v. Glover, 11 Kan. 232; Williams v. Railroad Co., 110 Cal. 457, 42 Pac. 974; Carroll v. People, 136 Ill. 456, 27 N. E. 18; Miller v. Root, 77 Iowa, 545, 42 N. W. 502. Mere inaccuracy of expression in a charge by which the jury could not be misled, is no ground of reversal. 11 Enc. Pl. & Prac. 136. The objection to the in-

struction just when it was given, and the correction made at the time, and repeated frequently thereafter, must have satisfied each member of the jury, as plainly as the English language can, that from the testimony relating to the rental value of the land during the years that respondent had been deprived of its use, and that which went to the question of permanent injury to the freehold already occasioned, he must determine the actual damages thus sustained prior to the commencement of the action. Moreover, the amount of the verdict, viewed in the light of the evidence, clearly indicates a recovery safely within the foregoing limitation.

No objection was offered to the measure of damages employed, nor to the introduction of testimony consistent therewith, and no claim is made that the evidence is insufficient to sustain the verdict. While the court declined to give in exact phraseology certain instructions offered by counsel for appellant, the substance of every proper request was contained in the charge of the court, which so aptly expressed what appellant claimed to be the law of the case that no good reason for complaint has been assigned. According to a familiar rule, no exception lies to a refusal to give an instruction in the terms requested, if it be given in substance by the court. In fact, the practice of taking the instructions requested, and formulating therefrom, so far as servicable, a general charge, expressed in the language of the court, without unecessary repetition, and covering all matters of law arising from the evidence, has received special commendation. 11 Enc. Pl. & Prac. 288-290; Weld v. Brooks, 152 Mass. 297, 25 N. E. 719; Bissot v. State, 53 Ind. 408; Rounsaville v. Watters, 94 Ga. 707, 20 S. E. 93; Railway Co. v. Ward, 4 Colo. 30; Deitz v. Regnier; 27 Kan. 94.

None of the alleged errors relied upon justify a reversal, and the judgment appealed from is affirmed.